# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CLARISHA BENSON and LORENZO SMITH, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| FANNIE MAY CONFECTIONS BRANDS, INC., a Delaware Corporation | ) ) ) ) |
| Defendant. | ) |

No. 17 C 3519

Judge Sara L. Ellis

## OPINION AND ORDER

Plaintiffs Clarisha Benson and Lorenzo Smith purchased some delightful treats at two stores owned by Defendant Fannie May Confections Brands, Inc. ("Fannie May"), and were saddened to discover upon opening their boxes of Mint Meltaways and Pixies that the boxes were not brimming with delectable goodies. Rather, the boxes were filled merely two-thirds of the way to their brims, leaving Benson and Smith twenty-four-cubic-inches or more short of satisfaction. Plaintiffs now bring this putative class action alleging that the candies in question did not simply melt or fly away as their names imply, but that Fannie May never placed them in the box in the first place and did so to trick potential consumers into believing they were receiving more candy than they really were. Plaintiffs' complaint alleges violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 *et seq.*, and seeks injunctive relief (Count I) and damages (Count II). Plaintiffs also have two Illinois common-law claims for unjust enrichment (Count III) and breach of implied contract (Count IV). Fannie May moves to dismiss [11] the complaint in its entirety, arguing that

Plaintiffs have not alleged a violation of the Food Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq.*, therefore all of their state-law claims are preempted and must be dismissed. Alternatively, Fannie May argues that Plaintiffs have not adequately pleaded the elements of their ICFA claim, that they lack standing to bring claims on behalf of purchasers of products Plaintiffs did not purchase, and that they lack standing to seek injunctive relief. Because the Plaintiffs have not adequately alleged a violation of the FDCA, the Court grants the motion to dismiss the complaint without prejudice. Additionally, the Court grants the motion to dismiss the injunctive relief claim because Plaintiffs do not adequately allege that they are likely to be injured in the future and the Court grants the motion to dismiss with respect to the products Plaintiffs did not purchase because they lack standing to bring those claims.

## BACKGROUND[1]

Plaintiffs purchased two 7 ounce, opaque boxes of candy from Fannie May for approximately $10 each. Upon opening the boxes, Plaintiffs realized that the boxes were not filled to the top, but contained between 33% and 40% of empty space. This empty space is called "slack-fill." The candies Plaintiffs purchased were Mint Meltaways and Pixies. In addition to these candies, Fannie May also sells Hot Fudge Truffles, Peanut Butter Buckeyes, Sea Salt Caramels (Dark), Sea Salt Caramels (Milk), Pixies ("Bite Size"), Carmash (Milk), Carmash (Dark), and Trinidads (collectively, the "Non-purchased Products," and, with the Mint Meltaways and Pixies, the "Products") in similar 7 ounce boxes. The Non-purchased Products also include substantial amounts of slack-fill, in all cases exceeding 33%. Plaintiffs, despite having not purchased any of these other candies, bring this putative class action on behalf of consumers who may have purchased them.

---

[1] The facts in the background section are taken from the complaint and are presumed true for the purpose of resolving Fannie May's motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

Plaintiffs state that the slack-fill in these boxes has no functional purpose and therefore is misleading to consumers. They allege that had they known the Products contained large amounts of slack-fill, they would not have purchased them.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This "ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank*, 649 F.3d at 615 (citation omitted). Rule 9(b) applies to "all averments of fraud, not claims of fraud." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). "A claim that 'sounds in fraud'— in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." *Id.*

## ANALYSIS

**I.  Jurisdiction**

As a preliminary matter, the Court addresses its subject matter jurisdiction to hear this case. On December 19, 2017, the Court ordered the parties to submit briefs on the issue of subject matter jurisdiction, because upon review of the complaint, the Court noted that it was not clear from the face of the complaint that such jurisdiction existed. Plaintiffs asserted federal jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Under CAFA, federal courts have jurisdiction over a class action in which the amount in controversy exceeds $5,000,000 and "[a]ny member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). However, the Court shall decline to exercise that jurisdiction if "greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed," and at least one defendant is a citizen of that same state. *Id.* § 1332(d)(4).

The complaint sufficiently alleged that the amount in controversy exceeds $5,000,000, but did not adequately allege diversity. The complaint alleged that Fannie May is an Illinois corporation and that all of the named plaintiffs were Illinois citizens. The complaint did state that at least one unnamed member of the putative class would be a non-Illinois resident, but this is insufficient to satisfy § 1332(d). *See Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 733 (7th Cir. 2017) (simply stating that a member of a class of plaintiffs is from a different state than a defendant does not satisfy the requirement of minimal diversity). Furthermore, the complaint seeks damages arising only from sales at physical stores in Chicago, Illinois, and online, but makes no representation as to what percentage of those purchases were made by Illinois residents

versus non-Illinois residents, making it impossible for the Court to determine whether § 1332(d)(4) required the Court to decline to exercise jurisdiction.

The filing of Fannie May's response to the Court's December 19, 2017 Order rendered these issues moot. In that response, Fannie May stated that it is in fact not a citizen of Illinois, but is a Delaware corporation with its principal place of business in Ohio. *See Toulon*, 877 F.3d at 732 (allowing parties to provide additional facts by affidavit to establish subject matter jurisdiction). This fact changes the analysis above, as it is now clear that there is diversity sufficient to satisfy § 1332(d)(2) and § 1332(d)(4) is no longer implicated. Therefore, the Court finds that it has subject matter jurisdiction and now turns to the substance of Fannie May's motion to dismiss.

## II.     Motion to Dismiss

Fannie May moves to dismiss Plaintiffs' complaint arguing that they have failed to adequately allege a violation of the FDCA, that they have failed to allege a deceptive act on the part of Fannie May, and that they have failed to plead causation and damages. To state an ICFA deceptive practices claim, Plaintiffs must allege (1) a deceptive or unfair act or practice by Fannie May, (2) Fannie May's intent that Plaintiffs rely on the deceptive or unfair practice, (3) the deceptive or unfair practice occurred in the course of conduct involving trade or commerce, and (4) Fannie May's deceptive or unfair practice caused Plaintiffs actual damage. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012); *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010). Because Plaintiffs proceed on a deceptive practices claim, they must meet Rule 9(b)'s heightened pleading standard. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014).

### A. FDCA Preemption

The FDCA does not provide a private right of action; therefore, Plaintiffs are only able to seek relief pursuant to related state-law causes of action. *See Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011). However, the FDCA expressly preempts state law claims that impose labeling requirements "not identical" to its own requirements. 21 U.S.C. § 343-1. For the purposes of preemption the FDA has said that:

> "Not identical to". . . means that the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food, or concerning a food container, that: (i) Are not imposed by or contained in the applicable provision (including any implementing regulation) of section 401 or 403 of the act; or (ii) Differ from those specifically imposed by or contained in the applicable provision (including any implementing regulation) of section 401 or 403 of the act.

21 C.F.R. § 100.1(c)(4). Thus, a plaintiff bringing a misleading labeling claim under state law must allege a violation of the FDCA to avoid preemption. *Trazo v. Nestle USA, Inc.*, No. 5:12-CV-2272 PSG, 2013 WL 4083218, at *5 (N.D. Cal. Aug. 9, 2013) ("To avoid preemption under Section 343-1(a), the plaintiff must be suing for conduct that violates the FDCA.").

Here, Plaintiffs argue that the Products violate the FDA's slack-fill regulations. Slack-fill is "the difference between the actual capacity of a container and the volume of product contained therein." 21 C.F.R. § 100.100(a). Slack-fill can be functional or nonfunctional; however, containers that do not allow consumers to fully view their content may not have non-functional slack-fill. *Id.* A package contains nonfunctional slack-fill if it is filled to less than capacity for any reason other than the following six:

> (1) Protection of the contents of the package;
>
> (2) The requirements of the machines used for enclosing the contents in such package;

> (3) Unavoidable product settling during shipping and handling;
>
> (4) The need for the package to perform a specific function (e.g., where packaging plays a role in the preparation or consumption of a food), where such function is inherent to the nature of the food and is clearly communicated to consumers;
>
> (5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value which is both significant in proportion to the value of the product and independent of its function to hold the food, e.g., a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed; or durable commemorative or promotional packages; or
>
> (6) Inability to increase level of fill or to further reduce the size of the package (e.g., where some minimum package size is necessary to accommodate required food labeling (excluding any vignettes or other nonmandatory designs or label information), discourage pilfering, facilitate handling, or accommodate tamper-resistant devices).

*Id.* Furthermore, any slack-fill in excess of the amount "necessary to accomplish a particular function is nonfunctional slack-fill." *Misleading Containers; Nonfunctional Slack-Fill*, 58 Fed. Reg. 64123-01, 64126 (Dec. 6, 1993).

Plaintiffs allege that the Products' packaging is opaque, contains more than 33% slack-fill, and that the slack-fill is in excess of the amount necessary to achieve the purposes enumerated in § 100.100(a). There are not many previous cases dealing with the slack-fill regulations, but when faced with similar barebones allegations, courts across the country have found them insufficient to state a violation of the regulations. *See, e.g.*, *Martinez-Leander v. Wellnx Life Scis., Inc.*, No. CV 16-08220 SJO (EX), 2017 WL 2616918, at *7 (C.D. Cal. Mar. 6, 2017) (alleging defendants did not meet any of the exceptions and lacked any lawful justification for slack-fill is insufficient to state a claim); *Bautista v. CytoSport, Inc.*, 223 F. Supp. 3d 182, 190–91 (S.D.N.Y. 2016) (same); *Wurtzburger v. Kentucky Fried Chicken*, No. 16-CV-08186 (NSR), 2017 WL 6416296, at *5 (S.D.N.Y. Dec. 13, 2017) (granting motion to dismiss where

7

plaintiff alleged no facts plausibly showing that the slack-fill was not functional); *Bush v. Mondelez Int'l, Inc.*, No. 16-CV-02460-RS, 2016 WL 7324990, at *4 (N.D. Cal. Dec. 16, 2016) (conclusory allegations regarding nonfunctional slack-fill insufficient to survive a motion to dismiss). Plaintiffs do not cite any cases in their response in the section regarding the slack-fill regulations. However, in support of their argument that they have properly pleaded an ICFA claim they cite to *White v. Just Born, Inc.*, No. 2:17-CV-04025-C-NKL, 2017 WL 3130333 (W.D. Mo. July 21, 2017), in which the court denied a motion to dismiss a consumer fraud claim, finding that the plaintiffs had adequately alleged a violation of the federal slack-fill regulations. *White* is distinguishable from the present case, however, because in *White*, the plaintiffs included concrete allegations to support their claim that defendants' use of slack-fill did not fall into any of the six exceptions. The plaintiffs specifically alleged:

> [T]he boxes have "substantial, non-functional slack-fill" that "cannot be justified"; industry-standard machines are capable of filling and enclosing the boxes "with far less slack-fill"; similar candies are packaged and sold in similar boxes containing "substantially less slack-fill" than Just Born's Hot Tamales and Mike and Ike boxes; and "the level of fill . . . can certainly be increased[,]" as demonstrated by promotional sales of the Hot Tamales and Mike and Ike candies in the same kinds of boxes "with increased fill levels[.]"

*Id.* at *7 (quoting complaint); *see also Escobar v. Just Born Inc.*, No. CV1701826BROPJWX, 2017 WL 5125740, at *12 (C.D. Cal. June 12, 2017) (enumerating six factual allegations plaintiff made to plausibly allege the existence of nonfunctional slack-fill). Unlike in the present case, these allegations go well beyond the bare elements and plausibly state a claim that the slack-fill in the offending boxes was nonfunctional in violation of § 100.100(a). Plaintiffs' barebones allegations, on the other hand, are not sufficient to state a violation of § 100.100(a) under either Rule 8 or the heightened standard under Rule 9(b).

8

Thus, because Plaintiffs have not adequately alleged a violation of the federal regulations, they cannot state a non-preempted claim under Illinois law, and the Court accordingly grants the motion to dismiss.

**B.       Injunctive Relief**

Although the Court need not address the issue of injunctive relief because Plaintiffs have not alleged a violation of federal law, the Court will address the issue because it is fully briefed and will serve judicial efficiency to rule on the issue rather than delay.

Even if Plaintiffs had alleged a violation of federal law and a colorable ICFA claim, they still would have no right to seek injunctive relief. ICFA does provide for injunctive relief "when appropriate," 815 Ill. Comp. Stat. § 505/10a(c); however, a party must still establish standing to seek that relief. *See Ulrich v. Probalance, Inc.*, No. 16 C 10488, 2017 WL 3581183, at *7 (N.D. Ill. Aug. 18, 2017) (plaintiff seeking injunctive relief in mislabeling case lacked standing because the alleged harm had already occurred). To establish standing to seek injunctive relief, a plaintiff must allege a threat of future harm that is not conjectural or hypothetical. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992); *see also O'Shea v. Littleton*, 414 U.S. 488, 495–96, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects.").

Plaintiffs allege that they will suffer harm again in the future if they decide to purchase Fannie May's products because they cannot rely upon the packaging. But, already aware of Fannie May's alleged deceptive practices, Plaintiffs cannot claim they will be deceived again in the future. Most courts to address similar circumstances have held that absent some concrete basis to conclude that the plaintiffs will or must purchase the product again in the future and be

9

deceived, they cannot meet the standing requirements for injunctive relief claims. *See Ulrich*, 2017 WL 3581183 at *7 (a plaintiff who is aware of the alleged deceptive practice faces no threat of being revictimized); *In re Herbal Supplements Mktg. & Sales Practices Litig.*, No. 15-CV-5070, 2017 WL 2215025, at *7 (N.D. Ill. May 19, 2017) (same). And the Seventh Circuit stated in *Camasta v. Jos. A. Bank Clothiers, Inc.*, in dicta, that a plaintiff who is aware of a defendant's deceptive practices is not likely to be harmed by them in the future, and therefore lacks standing to pursue injunctive relief. 761 F.3d 732, 741 (7th Cir. 2014). Therefore, even if Plaintiffs adequately pleaded a violation of federal law, they lack standing to seek prospective injunctive relief against Fannie May.

### C. Standing for Non-Purchased Products

Plaintiffs allege only purchasing the Mint Meltaways and the Pixies, but seek to bring this action on behalf of a putative class of individuals who purchased eight other Fannie May products, namely, Hot Fudge Truffles, Peanut Butter Buckeyes, Sea Salt Caramels (Dark), Sea Salt Caramels (Milk), Pixies ("Bite Size"), Carmash (Milk), Carmash (Dark), and Trinidads. Plaintiffs allege that all of the Products are sold in 7.0 ounce packages, that the packages are non-transparent, and that the packages contain nonfunctional slack-fill. In Exhibits A and B to the complaint, Plaintiffs attached photos of most of the Non-Purchased products and their boxes. In Exhibit B, Plaintiffs show that the various boxes have different levels of slack-fill ranging from 38% to 59%. What is also apparent from the photos is that the various items are all different sizes and shapes.

Several courts have found that a plaintiff may pursue claims based on products he did not purchase that are similar to products he did purchase in a class action under limited circumstances. A "plaintiff may have standing to assert claims for unnamed class members

based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Ulrich*, 2017 WL 3581183, at *6 (quotation marks omitted) (citation omitted). However, other courts have declined to follow this line of argument, holding that named plaintiffs in a putative class action cannot overcome the requirements of Article III standing simply by arguing that products are substantially similar; they must still satisfy the injury in fact requirement. *Porter v. NBTY, Inc.*, No. 15 CV 11459, 2016 WL 6948379, at *3 (N.D. Ill. Nov. 28, 2016).

Even if the Court were to side with the former line of cases, Plaintiffs have not shown that the Non-Purchased Products are substantially similar to the products they purchased so as to confer standing upon them. Plaintiffs assert that the Products here are substantially similar because they are all "chocolate and confection products," and that the alleged misrepresentation is the same for all of them, *i.e.*, they contain nonfunctional slack-fill. Doc. 20 at 15. These two similarities could equally apply to not just other candies made by Fannie May, but to products made by almost any other chocolate or confection maker who sells their products in opaque containers. As Fannie May points out, and the exhibits to the complaint confirm, the Products are all substantially different in size, ingredients, and in many cases, their packaging. Beyond being candies sold by Fannie May, the Products are not similar enough to grant standing to Plaintiffs who did not purchase them and thus were not harmed by any alleged mislabeling of those products.

Therefore, the Court dismisses the claims with respect to the Non-purchased Products on this basis as well.

**CONCLUSION**

For the foregoing reasons, the Court grants Fannie May's motion to dismiss [11] the complaint without prejudice.

Dated: February 28, 2018

SARA L. ELLIS
United States District Judge