UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CLARISHA BENSON and LORENZO SMITH, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | No. 17 C 3519 |
| v. | ) ) | Judge Sara L. Ellis |
| FANNIE MAY CONFECTIONS BRANDS, INC., a Delaware Corporation | ) ) ) ) | |
| Defendant. | ) ) | |

OPINION AND ORDER

After the Court dismissed their first complaint, Plaintiffs Clarisha Benson and Lorenzo

Smith seek a second bite at the chocolate and filed their First Amended Complaint ("FAC").

They seek to bring a putative class action on behalf of all individuals who purchased seven-

ounce boxes of Mint Meltaways and Pixies from Defendant Fannie May Confections Brands,

Inc. ("Fannie May"). As in the original complaint, Plaintiffs allege that they were deceived into

believing the opaque candy boxes contained more chocolates than they in fact did because the

boxes were partially empty. Plaintiffs allege violations of the Illinois Consumer Fraud and

Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 *et seq.*, seeking damages

(Count I). Plaintiffs also have two Illinois common-law claims for unjust enrichment (Count II)

and breach of implied contract (Count III). Fannie May moves to dismiss [39] the complaint in

its entirety, arguing that Plaintiffs have not alleged a violation of the Food Drug and Cosmetic

Act ("FDCA"), 21 U.S.C. § 301 *et seq.*, and therefore, the Court must dismiss all of their state-

law claims on preemption grounds. Alternatively, Fannie May argues that Plaintiffs have not

adequately pleaded the elements of their ICFA claim.  Because Plaintiffs have not adequately

alleged a violation of the FDCA after multiple attempts to do so, the Court grants the motion to

dismiss the FAC with prejudice.

<strong>BACKGROUND</strong>[1]

Plaintiffs purchased two seven-ounce, opaque boxes of candy from Fannie May for

approximately $10 each.  Upon opening the boxes, Plaintiffs realized that the boxes were not

filled to the top; they contained between 33% and 40% empty space.  This empty space is called

"slack-fill."  Plaintiffs purchased Mint Meltaways and Pixies (collectively, the "Products").

Fannie May packs the seven-ounce Products in boxes measuring 3.875" in length x 3.875" in

width x 4.875" in height, for a total volume of approximately 73.2 cubic inches.  Fannie May

also sells Mint Meltaways and Pixies in a fourteen-ounce box, which has the dimensions 3.875"

length x 3.875" width x 6.875" height, for a total volume of 103.2 cubic inches.

Plaintiffs state that the slack-fill in the Products' boxes has no functional purpose and

therefore is misleading to consumers.  They state that had they known the Products contained

large amounts of nonfunctional slack-fill, they would not have purchased them.

<strong>LEGAL STANDARD</strong>

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not

its merits.  Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.

1990).  In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-

pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in

the plaintiff's favor.  *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).  To survive

a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a

---

[1] The facts in the background section are taken from the FAC and are presumed true for the purpose of resolving Fannie May's motion to dismiss.  *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This "ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank*, 649 F.3d at 615 (citation omitted). Rule 9(b) applies to "all averments of fraud, not claims of fraud." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). "A claim that 'sounds in fraud'— in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." *Id.*

## ANALYSIS

Fannie May moves to dismiss Plaintiffs' FAC arguing that they have failed to adequately allege a violation of the FDCA, that they have failed to allege a deceptive act on the part of Fannie May, and that they have failed to plead causation and damages, unjust enrichment, or a breach of implied contract. The FDCA does not provide a private right of action; therefore, Plaintiffs are only able to seek relief pursuant to related state-law causes of action. *See Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011). However, the FDCA expressly preempts state law claims that impose labeling requirements "not identical" to its own requirements. 21 U.S.C. § 343-1. For the purposes of preemption the FDA has said that:

> "Not identical to". . . means that the State requirement directly or
> indirectly imposes obligations or contains provisions concerning

the composition or labeling of food, or concerning a food
container, that: (i) Are not imposed by or contained in the
applicable provision (including any implementing regulation) of
section 401 or 403 of the act; or (ii) Differ from those specifically
imposed by or contained in the applicable provision (including any
implementing regulation) of section 401 or 403 of the act.

21 C.F.R. § 100.1(c)(4). Thus, a plaintiff bringing a misleading labeling claim under state law

must allege a violation of the FDCA to avoid preemption. *Trazo v. Nestle USA, Inc.*, No. 5:12-

CV-2272 PSG, 2013 WL 4083218, at *5 (N.D. Cal. Aug. 9, 2013) ("To avoid preemption under

Section 343-1(a), the plaintiff must be suing for conduct that violates the FDCA.").

Here, Plaintiffs argue that the Products violate the FDA's slack-fill regulations. Slack-fill

is "the difference between the actual capacity of a container and the volume of product contained

therein." 21 C.F.R. § 100.100(a). Slack-fill can be functional or nonfunctional, and

nonfunctional slack-fill in containers that do not allow consumers to fully view their contents is

impermissible. *Id.* A package contains nonfunctional slack-fill if it is filled to less than capacity

for any reason other than the following six:

(1) Protection of the contents of the package;

(2) The requirements of the machines used for enclosing the
contents in such package;

(3) Unavoidable product settling during shipping and handling;

(4) The need for the package to perform a specific function (e.g.,
where packaging plays a role in the preparation or consumption of
a food), where such function is inherent to the nature of the food
and is clearly communicated to consumers;

(5) The fact that the product consists of a food packaged in a
reusable container where the container is part of the presentation of
the food and has value which is both significant in proportion to
the value of the product and independent of its function to hold the
food, e.g., a gift product consisting of a food or foods combined
with a container that is intended for further use after the food is
consumed; or durable commemorative or promotional packages; or

4

> (6) Inability to increase level of fill or to further reduce the size of
> the package (e.g., where some minimum package size is necessary
> to accommodate required food labeling (excluding any vignettes or
> other nonmandatory designs or label information), discourage
> pilfering, facilitate handling, or accommodate tamper-resistant
> devices).

*Id.* Furthermore, any slack-fill in excess of the amount "necessary to accomplish a particular function is nonfunctional slack-fill." *Misleading Containers; Nonfunctional Slack-Fill*, 58 Fed. Reg. 64123-01, 64126 (Dec. 6, 1993).

The Court previously dismissed Plaintiffs' Complaint because its allegations that the slack-fill is nonfunctional were simply a barebones statement that the slack-fill was in excess of the amount necessary to achieve the purposes enumerated in § 100.100(a). In the FAC, Plaintiffs have attempted to address this deficiency by including a bare recitation of the enumerated elements of § 100.100(a) and a comparison to the slack-fill in the fourteen-ounce version of the Mint Meltaways.

The comparison to the fourteen-ounce package is not sufficient to allege a violation of the federal slack-fill regulations. In summary, Plaintiffs allege that the volume of the seven-ounce boxes is 73.201 cubic inches and the volume of the fourteen-ounce Mint Meltaway box is 103.23 cubic inches. Plaintiffs argue that if all of the slack-fill in the seven-ounce boxes were functional, the fourteen-ounce box should be exactly twice as large to accommodate both the doubling of the amount of product and the doubling of the required slack-fill. However, because the fourteen-ounce box is less than double the volume of the seven-ounce box, Plaintiffs argue there must be some amount of nonfunctional slack-fill in the seven-ounce boxes.

The Court finds this argument unpersuasive for two reasons. First, in its guidance interpreting the slack-fill statute, the FDA cautions against concluding slack-fill is nonfunctional based on comparisons to other identical products, let alone similar products packaged differently.

*Misleading Containers; Nonfunctional Slack-Fill*, 58 Fed. Reg. 2957-01, 2964, 1993 WL 1564 (Jan. 6, 1993) ("A certain amount of consumer dissatisfaction with slack-fill is likely to remain since the amount of slack-fill in general will continue to vary between packages of the same products."). Other courts to consider a similar approach have also found it unavailing. *See Alce v. Wise Foods, Inc.*, No. 17 Civ. 2402 (NRB), 2018 WL 1737750, at *7–8 (S.D.N.Y. Mar. 27, 2018) (comparison of slack-fill in defendant's product to similar products in the market is inadequate to plead the existence of nonfunctional slack-fill). This type of comparison tells the Court nothing about the slack-fill in the containers in question. The fact that a different container is filled to a different level is not only unsurprising, it is what one would expect. *See Misleading Containers; Nonfunctional Slack-Fill*, 58 Fed. Reg., 64135 ("FDA recognizes that there is significant variability in the amount of the slack-fill in packages, both between and within commodity classes and even within a single-product line.").

Second, even if the FDA did not clearly disfavor such comparisons for determining whether slack-fill is functional, the comparison itself is of little value. There is no basis for determining that a larger box should have proportionately the same amount of slack-fill as a smaller box. Fannie May could be using different machines that have differing levels of precision to fill the boxes or could be using the same machine to fill the boxes but it is a machine that is not able to fill smaller boxes as accurately as larger boxes. *See Misleading Containers; Nonfunctional Slack-Fill*, 58 Fed. Reg. at 2961 ("The amount of slack-fill in the package will vary depending on factors such as . . . the capabilities of the packaging equipment."). Plaintiffs allege nothing about how the fourteen-ounce box and the seven-ounce boxes are filled, for example that they are packaged using the same equipment and what the functionality of that equipment is with respect to the two sizes. Plaintiffs simply state that the fourteen-ounce box

has proportionately less slack-fill and therefore the seven-ounce boxes must contain nonfunctional slack-fill. This is not enough to state a violation of the FDCA.

Plaintiffs other allegations are also premised on the difference in fill between the fourteen-ounce box and the seven-ounce boxes, but in reality, are largely recitations of the § 100.100(a) factors with conclusory statements appended to them. *See* Doc. 36 ¶¶ 38–43. Plaintiffs' allegations in paragraph 44 are the lone exception. Plaintiffs allege that the size of the packaging is not necessary to accommodate the required food labeling and that it does not contain any tamper-resistant devices. *Id.* ¶ 44. These statements are true and supported by the photographs in the FAC, but they only go to two of the § 100.100(a) factors. The remaining § 100.100(a) factors can adequately account for the presence of 33% and 38% slack-fill in the Products and Plaintiffs' conclusory allegations that they cannot are insufficient to state a claim. *See, e.g.*, *Martinez-Leander v. Wellnx Life Scis., Inc.*, No. CV 16-08220 SJO (EX), 2017 WL 2616918, at *7 (C.D. Cal. Mar. 6, 2017) (alleging defendants did not meet any of the exceptions and lacked any lawful justification for slack-fill is insufficient to state a claim); *Wurtzburger v. Kentucky Fried Chicken*, No. 16-CV-08186 (NSR), 2017 WL 6416296, at *5 (S.D.N.Y. Dec. 13, 2017) (granting motion to dismiss where plaintiff alleged no facts plausibly showing that the slack-fill was not functional); *Bautista v. CytoSport, Inc.*, 223 F. Supp. 3d 182, 190–91 (S.D.N.Y. 2016) (same); *Bush v. Mondelez Int'l, Inc.*, No. 16-CV-02460-RS, 2016 WL 7324990, at *4 (N.D. Cal. Dec. 16, 2016) (conclusory allegations regarding nonfunctional slack-fill insufficient to survive a motion to dismiss).

In the prior Order, the Court distinguished the Complaint from the complaint in *White v. Just Born, Inc.*, which survived a motion to dismiss. No. 2:17-CV-04025-C-NKL, 2017 WL 3130333 (W.D. Mo. July 21, 2017). In *White*, the plaintiffs alleged that the defendant sold the

7

identical products in identical boxes with less slack-fill. *Id.* at \*7. Plaintiffs here again fall short of what the plaintiffs alleged in that case. Here, Plaintiffs have not identified an identical box containing a greater volume of the same product. Instead, they point to a larger box of the same products that contains proportionately less slack-fill. Plaintiffs ask the Court to accept the conclusion that a box containing twice as much product should include twice as much slack-fill if all of the slack-fill is functional. For the reasons stated above the Court finds this comparison unhelpful and the opinion in *White* distinguishable.

Finally, as a matter of housekeeping, Fannie May moved the Court to take judicial notice of several images of the Mint Meltaway and Pixies packaging and nutrition facts labels. The Court did not rely upon these images in reaching it ruling here; therefore, it denies the motion for judicial notice as moot.

Thus, because Plaintiffs have not adequately alleged a violation of the federal regulations, they cannot state a non-preempted claim under Illinois law, and the Court therefore grants the motion to dismiss with prejudice. After previously granting Fannie May's first motion to dismiss on the same basis, Plaintiffs are not closer to alleging a plausible violation of the federal slack-fill regulations. Therefore, the Court finds that after two opportunities to plead their best case, further amendment would be futile.

## CONCLUSION

For the foregoing reasons, the Court grants Fannie May's motion to dismiss [36] the complaint with prejudice. The Court denies Fannie May's motion for judicial notice [41] as moot.

Dated: December 10, 2018

 

_____
SARA L. ELLIS
United States District Judge